**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ceci Chalasani, | No. CV-20-00460-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Paymentwall, Inc. et al, | |
| Defendants. | |

Plaintiff Ceci Chalasani filed this lawsuit on March 3, 2020 against Defendant Onur Gunday and corporations Services Arizona, Inc. and Paymentwall, Inc. (the "Corporate Defendants"). Doc. 1. The Corporate Defendants were served and have appeared in this action. Docs. 7, 20. Gunday claims that he has not been served with process despite the Court's previous extension of the service deadline, and moves to dismiss the claims against him for insufficient service and lack of personal jurisdiction. Doc. 35. Plaintiff contends that Gunday was served through substitute service on June 29, 2020. If the Court finds that he was not properly served, Plaintiff requests a second extension of the service deadline and an order authorizing service on defense counsel. Doc. 37. The Court finds that Gunday was not validly served through substitute service, but will deny Gunday's motion to dismiss, grant Plaintiff's request for another extension, and authorize alternative service on defense counsel.[1]

---

[1] The Court finds that oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b).

## I. Background.

### A. Plaintiff's Initial Service Attempts.

Gunday serves as Chief Executive Officer of the Corporate Defendants. Doc. 1 ¶ 4. Plaintiff served the summons and verified complaint on the Corporate Defendants on March 11, 2020. Docs. 7, 22. Over the next several weeks, Plaintiff made numerous unsuccessful attempts to serve Gunday. Doc. 37 ¶¶ 3-12. Plaintiff first attempted to serve him through a process server on March 17, 2020 at his last known home address in Las Vegas. Doc. 37 ¶ 3. Plaintiff made three additional attempts to serve Gunday at the Las Vegas address on March 21, 23, and 25. *Id.* ¶ 4. After these efforts proved fruitless, Plaintiff's counsel emailed then-counsel for the Corporate Defendants and asked that she accept service on Gunday's behalf. *Id.* ¶ 5. Counsel responded that she lacked authority to accept service. *Id.*

On April 21, 2020, Plaintiff's counsel sent a request for Waiver of Service of Summons to counsel for the Corporate Defendants. Doc. 37 ¶ 7. Plaintiff received no response. *Id.* Plaintiff then attempted to serve Gunday at his last-known business address in San Francisco. Plaintiff's process server made unsuccessful attempts on April 23, April 29, May 8, and May 11. *Id.* ¶ 9. Meanwhile, Gunday clearly knew of this litigation. On May 5, 2020, he signed a consent for counsel for the Corporate Defendants to withdraw and be replaced by new counsel. *Id.* ¶ 10.

On May 29, current counsel for the Corporate Defendants appeared in the case. *See* Doc. 20. On June 2, one day after the deadline for service on Gunday had passed, Plaintiff's counsel asked Corporate Defendants' new counsel to accept service on Gunday's behalf. Doc. 37 ¶ 12. New counsel refused to do so on the ground that service was untimely, claiming that it was now necessary to dismiss Gunday from the case. Doc. 37-2 at 2.

### B. Plaintiff's Request for Extension of Time.

On June 12, 2020, Plaintiff filed a Motion for Extension of Time to Serve Complaint and Motion for Alternative Service on Defendant. Doc. 23. The Court

denied the motion for alternative service, but extended the deadline to July 17, 2020 and ordered corporate defense counsel to provide Gunday's home or business address. *See* Doc. 26. The Court cautioned:

> If for any reason Defendant fails to provide his home or business address, Plaintiff is permitted to serve the complaint on defense counsel. Defendant has participated in this case, signing previous counsel's request to withdraw, and is obviously aware of the litigation. Plaintiff has made nine attempts to serve him, and his refusal to provide an address at which he can now be served will confirm his efforts to evade service and will justify alternative service on his counsel.

*Id*.

### C. Plaintiff's Subsequent Service Attempts.

Gunday's counsel provided Plaintiff's attorneys with the Las Vegas and San Francisco addresses at which service had already been attempted. *See* Doc. 37-3 at 2. Gunday's counsel further stated that he travelled between the two locations, but that he intended primarily to be at the San Francisco address beginning the week of June 21. *Id.*

Plaintiff's process server, James With, attempted to serve Gunday at the San Francisco address on June 26 and 27, without success. Doc. 37-4 ¶¶ 4-5. Mr. With made a third attempt on June 29. *Id.* ¶ 6. According to Mr. With's declaration, at this point an individual named James Morrison answered the door, "identified himself," and accepted the materials after being informed they were legal papers for Gunday. *Id.* ¶¶ 6-7. After leaving the documents with Mr. Morrison, Mr. With placed copies of the documents in a sealed envelope and sent them via first-class mail to the San Francisco address. *Id.* ¶ 8.

On July 7, Mr. With again attempted to personally serve Gunday at the San Francisco address. Gunday was not there. *Id.* ¶ 10. On July 9, Mr. With called a phone number posted on the door of the San Francisco address. *Id.* ¶ 11. According to Mr. With's declaration, Gunday answered the phone, confirmed that he had received the documents from Mr. Morrison the previous week, and expressed his unhappiness that Mr. With had left the documents with "his intern." *Id.* ¶¶ 13-14. Gunday then informed

Mr. With that he had been in the office for a majority of the previous four months – and in fact was there at the moment – but would be leaving for London that weekend. *Id.* ¶ 16. When Mr. With said he could be at the office within 15 minutes to complete service, Gunday responded that he had a previous appointment and would be unavailable at that time. *Id.* ¶¶ 17-18. Mr. With attempted to make an appointment for personal service, but Gunday refused, saying that he did not want to be "tied down." *Id.* ¶ 19. He told Mr. With that he was usually at the San Francisco address around 11 a.m., and Mr. With said he would return the following day at that time. *Id.* ¶¶ 20-21. Gunday neither confirmed nor denied the appointment. *See id.* ¶ 22.

Mr. With returned to the San Francisco address the next day, July 10, at 10:45 a.m. *Id.* ¶ 22. He waited outside the business, but did not see a man matching Gunday's description enter or exit. *Id.* ¶ 23. At 11:10 a.m., he approached the business and asked for Gunday, but employees informed him that Gunday was not present. *Id.* ¶ 24. Five minutes later, Mr. With called Gunday's number. Gunday said he was running errands and did not know when he would be back in the office. *Id.* ¶¶ 25-26. Mr. With left the San Francisco address and returned at 12:10 p.m. *Id.* ¶ 28. He called Gunday again, but Gunday did not answer. *Id.*

Gunday claims that (1) the only "James Morrison" working at the San Francisco address works for an unaffiliated company, has no connection to either Gunday or the Corporate Defendants, and thus could not have represented himself as having authority to accept service on Gunday's behalf; (2) Mr. Morrison could not have answered the door on June 29, as Mr. With claims, because there is neither a call box nor doorbell, and no reception desk at the front to hear someone knocking; (3) neither Gunday nor Paymentwall's employees ever received the materials that Mr. With purportedly mailed to the San Francisco address after leaving the legal paperwork with Mr. Morrison; and (4) not only did Gunday never tell Mr. With that he had received the legal documents

4

1   from his "intern" Mr. Morrison, but the July 9 phone conversation never occurred.
2   Doc. 45-1 ¶¶ 23-34.[2]

3   On July 16, 2020 – the day before the Court's deadline to serve Gunday –
4   Plaintiff filed a notice of service claiming that substitute service had been made on
5   Gunday by leaving the legal documents with Mr. Morrison. *See* Doc. 33. Gunday
6   moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient
7   service of process and Rule 12(b)(2) for lack of personal jurisdiction, claiming that
8   Plaintiff's substitute service was improper and that Plaintiff has again missed the
9   deadline for serving him. Doc. 35.

10  **II.   Legal Standard.**

11  Federal courts cannot exercise personal jurisdiction over a defendant without
12  proper service of process. *See Omni Capital Int'l Ltd v. Rudolf Wolff & Co.*, Ltd., 484
13  U.S. 97, 104 (1987); *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d
14  535, 538 (9th Cir. 1986). Improper service can result in dismissal under Rule 12(b)(5)
15  for insufficient service or under Rule 12(b)(2) for lack of personal jurisdiction.

16  Rule 4 "governs the commencement of an action and the service of process."
17  *Gregory v. Harris*, No. CV11-0372 PHX DGC, 2011 WL 6205902, at *1 (D. Ariz. Dec.
18  13, 2011) (citing *Employee Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 999 (9th
19  Cir. 2007)). Rule 4(e) provides the appropriate avenues for serving individuals. Among
20  other means, service can be accomplished by "following state law for serving a

---

[2] Gunday also claims that he was present at the San Francisco address during Plaintiff's initial service attempts in late April and early May 2020, and that the process server failed to follow the directions on the front door advising anyone with deliveries or mail to call one of two local phone numbers, one of which was Gunday's personal cell phone. Doc. 45-1 ¶¶ 12-15. Gunday also claims that no attempts were ever made to serve him at the Las Vegas address in March 2020, because he never found the card that the process server claims to have left at his door, nor did the building concierge contact him regarding any attempted deliveries. *See id.* As discussed below, because Gunday first raises these facts in his reply memorandum, the Court will not consider them.

5

1  summons in an action brought in courts of general jurisdiction in the state where the
2  district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

3  Rule 4(m) provides that if a summons and complaint are not served on a
4  defendant within 90 days after filing, the court must dismiss the action without prejudice
5  against that defendant or order that service be made within a specified time. "[I]f the
6  plaintiff shows good cause for the failure" to serve, "the court must extend the time for
7  service for an appropriate period." Fed. R. Civ. P. 4(m). The Ninth Circuit has
8  explained that Rule 4(m) "*requires* a district court to grant an extension of time when the
9  plaintiff shows good cause for the delay." *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th
10  Cir. 2007) (internal citations omitted) (emphasis in original). A plaintiff may establish
11  good cause by showing that he made a reasonable and diligent effort to effect service.
12  *See Electrical Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 312 (9th Cir.
13  1992). "Additionally, the rule permits the district court to grant an extension even in the
14  absence of good cause." *Efaw*, 473 F.3d at 1040 (internal citations omitted). Rule 4 is
15  "liberally construed so long as a party receives sufficient notice of the complaint."
16  *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685,
17  688 (9th Cir. 1988) (internal quotation marks omitted). When determining whether an
18  extension is warranted, a district court should consider factors such as prejudice to the
19  defendant, actual notice of a lawsuit, and eventual service. *Efaw,* 473 F.3d at 1041.

20  "Generally, when service of process is contested, the burden is on the plaintiff to
21  show that proper service was made." *Udoh v. Glencroft*, No. CV09-0908 PHX DGC,
22  2009 WL 5128575, at *1 (D. Ariz. Dec. 17, 2009) (citations omitted). A plaintiff
23  normally meets this burden by producing the process server's return of service. *Emine*
24  *Tech. Co. v. Aten Int'l Co.*, No. C 08-3122 PJH, 2008 WL 5000526, at *2 (N.D. Cal.
25  Nov. 21, 2008). Because such a return "is generally accepted as prima facie evidence
26  that service was effected, and of the manner in which it was effected," a defendant
27  moving to dismiss under Rule 12(b)(5) must "produce affidavits, discovery materials, or
28  other admissible evidence establishing the lack of proper service" unless some defect in

service is shown on the face of the return. *Id.* "In response, the plaintiff must provide evidence showing that the service was proper, or creating an issue of fact requiring an evidentiary hearing to resolve." *Id.*

### A. Service of Process Under Rule 4 and Cal. Civ. Proc. Code § 415.20(b).

Under Rule 4(e)(1), individuals in the United States can be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). In this case, therefore, Gunday can be served under the rules of Arizona (where the Court is located) or California (where service was attempted). *See id.*

Plaintiff argues that Gunday was properly served under California law when the summons and verified complaint were left with Mr. Morrison on June 29.[3] Specifically, the California Code of Civil Procedure provides that:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Code Civ. Proc. § 415.20(b).

Plaintiff argues that she: (1) exercised "reasonable diligence" under the statute by repeatedly attempting to personally serve Gunday before June 29; (2) left the summons and complaint with Mr. Morrison, who was the "person apparently in charge" at the San

---

[3] Gunday suggests that service was ineffective because Morrison was given the original complaint instead of the amended complaint. Doc. 35 at 3 n.4. Because the Court finds that substitute service was ineffective for other reasons, it need not address this issue.

7

Francisco Address; and (3) mailed copies of the documents to Gunday at the San Francisco address in the manner prescribed by the statute. Doc. 37 at 7-11.

Gunday claims that Plaintiff did not exercise "reasonable diligence" in attempting to personally serve him because Mr. With did not call the phone numbers on the door of the San Francisco address during his attempts to serve Gunday – a simple step that would have enabled Mr. With to "gain access and effectuate service." Doc. 35 at 5; *see also* Doc. 35-1 at 8-9 (photographs of the door of the San Francisco address containing contact phone numbers for deliveries or mail). Gunday also claims that substitute service on Mr. Morrison was improper because Morrison was not the "person apparently in charge" at the address. Doc. 45 at 10.

As an initial matter, the Court notes that Gunday's declaration contesting Mr. With's version of events was included for the first time in his reply memorandum. This left Plaintiff no opportunity to dispute Gunday's declaration, which effectively accuses Plaintiff's process server of lying under oath. *See* Doc. 45-1. "When new material is raised in a reply brief, a district court has the discretion to strike that material." *McCoy v. U.S. Collections W., Inc.,* No. CV-14-0048-PHX-LOA, 2014 WL 3898088, at *4 (D. Ariz. Aug. 11, 2014) (internal citations omitted); *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (declining to consider an issue raised for the first time in a reply brief); *Tovar v. U.S. Postal Serv*., 3 F.3d 1271, 1273 (9th Cir. 1993) (striking portions of a reply brief that presented new information). The Court will disregard Gunday's declaration in ruling on this motion.

### 1. "Reasonable Diligence."

Gunday first argues that substitute service was improper because Plaintiff failed to exercise reasonable diligence in personally serving him. Cal. Code Civ. Proc. § 415.20(b); Docs. 35 at 5, 45 at 8-11. The Court disagrees. Plaintiff attempted to serve Gunday numerous times at the Las Vegas and San Francisco addresses. Doc. 37 ¶¶ 3-12. After these attempts were unsuccessful, the Court warned Gunday that he needed to provide Plaintiff with an address at which he could be served. *See* Doc. 26. Defense

8

counsel subsequently provided Plaintiff with the same two addresses and informed her that Gunday would primarily be at the San Francisco address in the near future. Doc. 37-3 at 2. Plaintiff then unsuccessfully attempted personal service twice at the San Francisco address before attempting to effect substitute service on Mr. Morrison. Doc. 37-4 ¶¶ 4-5.

This was reasonable diligence. California courts have stated that "two or three attempts at personal service at a proper place should fully satisfy" the reasonable diligence requirement. *Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392, 245 Cal. Rptr. 596, 598 (Cal. Ct. App. 1988) (citation and internal quotation marks omitted). The fact that the process server failed to call the numbers posted on the door of the San Francisco address before attempting substitute service – a fact that Gunday emphasizes – does not change the Court's conclusion. Docs. 35 at 5, 45 at 3. The California rules for service of process are "to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant." *Bein v. Brechtel-Jochim Grp., Inc.,* 6 Cal. App. 4th 1387, 1392, 8 Cal. Rptr. 2d 351, 353–54 (1992) (internal citations omitted).

### 2. "Person Apparently In Charge."

Gunday contends that Mr. Morrison was not the "person apparently in charge" at the San Francisco address. Cal. Civ. Proc. Code § 415.20(b). Gunday claims that neither he nor the Corporate Defendants employ Mr. Morrison, and that Morrison's "only indicia of authority was that he walked out the door of the building . . . while the process server was there." Doc. 45 at 12. Plaintiff counters that Morrison was the "person apparently in charge" for two reasons: first, he was the only person to answer the door at the San Francisco address, and second, his status as Gunday's intern made it "likely" that he would deliver the papers to Gunday. Doc. 37 at 10.

The Court agrees with Gunday that Plaintiff's attempt at substitute service was inadequate. Plaintiff cites a California Court of Appeal case for the proposition that a person can be "apparently in charge" where he is the only person who responds to the

9

process server's attempt to enter the building. Doc. 37 at 9 (citing *Khourie, Crew & Jaeger v. Sabek, Inc.*, 220 Cal. App. 3d 1009, 1013, 269 Cal. Rptr. 687, 689 (Cal. Ct. App. 1990)). In *Khourie*, a process server attempting service on a corporation attempted to enter the corporation's place of business in order to serve its agent. *Id.* at 1012. The door of the business was locked, and when the process server rang the bell a woman came to the door, refused to unlock it, and stated that she was unwilling to accept the documents. *Id.* The process server left the documents outside the locked door in plain view of the woman and then mailed copies to the entity at its place of business. *Id.* The court held that substitute service was proper because "the process server attempted to leave a copy of the summons and complaint during usual office hours with the person apparently in charge of [the corporate defendant's] office – i.e., the only person who responded to his attempt to enter." *Id.* at 1013.

  *Khourie* is distinguishable. There appears to have been no dispute about whether the woman "apparently in charge" was associated with the entity being served. Here, the connection between Gunday and Morrison is unclear. There is no indication that Morrison identified himself to Mr. With as someone associated with either Gunday or the Corporate Defendants. Mr. With's declaration of service states only that he left the materials with Mr. Morrison, whom he described as a "[p]erson in charge of a place of business." Doc. 33. Mr. With's second declaration, attached to Plaintiff's response, is similarly sparse: it states only that Morrison "identified himself," but fails to state how Morrison identified himself or whether he said anything to connect himself with Gunday. *See* Doc. 37-4 ¶¶ 6-7. These types of "formulaic and conclusory" statements, without additional factual detail about how the person served was "apparently in charge," are insufficient to constitute valid substitute service under § 415.20(b). *See, e.g.*, *Dytch v. Bermudez*, No. 17-cv-02714-EMC, 2018 WL 2230945, at *3 (N.D. Cal. May 16, 2018) (plaintiff failed to make sufficient showing of valid substitute service where the affidavit merely stated that the person served was "apparently in charge" and lacked any additional factual detail).

Nor is the Court persuaded by Plaintiff's argument that the relationship between Morrison and Gunday made it "more likely than not" that Gunday would receive the papers. Doc. 37 at 10. The relevant question under the California statute is whether Morrison was a person apparently in charge of Gunday's office. Plaintiff does not explain how an intern can be in charge of an office, and, in any event, Mr. With does not contend that he was aware of Morrison's relationship with Gunday at the time substitute service was attempted on June 29.

*Khourie* also involved substitute service under a different section of the statute: § 415.20(a), which involves service on a corporate or noncorporate entity, as opposed to § 415.20(b), which involves service on natural persons. *See* Cal. Civ. Proc. Code § 415.20 cmt. "The requirements for substitute service on an individual defendant are somewhat more stringent" than those for an entity defendant. *Alameda Cty. Elec. Indus. Serv. Corp. v. Gatejen Consol. Indus., Inc.*, No. C-13-00241 JCS, 2013 WL 4081310, at *10 (N.D. Cal. June 27, 2013), *report and recommendation adopted*, No. C13-0241 TEH, 2013 WL 4156316 (N.D. Cal. Aug. 9, 2013). The Court cannot conclude that the process server's conclusory declaration establishes valid substitute service under California law.

### B.     Alternative Methods of Service.

If substitute service on Gunday is deemed invalid, Plaintiff requests that the Court extend the deadline to serve him and authorize service through counsel. Doc. 37 at 12. Gunday responds that service on his counsel would be "inappropriate" and would "condone Plaintiffs' [sic] process server's failure to take even minimal efforts to serve [Gunday]." Doc. 45 at 12. The Court will permit alternative service under Arizona procedures.

As already noted, the service of process rules of either California or Arizona can apply here. *See* Fed. R. Civ. P. 4(e)(1). In Arizona, if ordinary methods of service prove "impracticable" – meaning "extremely difficult or inconvenient" – the court may "order that service may be accomplished in another manner." Ariz. R. Civ. P. 4.1(k);

*Broad. Music Inc. v. BLK, III LLC*, 2019 U.S. Dist. LEXIS 105773, at *6 (D. Ariz. June 25, 2019) (quoting *Blair v. Burgener*, 245 P.3d 898, 903 (Ariz. Ct. App. 2010)).

> If the court allows an alternative means of service, the serving party must make a reasonable effort to provide the person being served with actual notice of the action's commencement. In any event, the serving party must mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served.

Ariz. R. Civ. P. 4.1(k).

Given the history recounted above, the Court concludes that service on Gunday is impracticable. The Court will permit alternative service on Gunday's counsel, with the additional requirement of Arizona Rule 4.1(k) that the summons, complaint, and this order be mailed to Gunday's San Francisco business address.[4]

**IT IS ORDERED:**

1. Gunday's motion to dismiss (Doc. 35) is **denied**. The deadline for service on Gunday is extended to **December 7, 2020**.

2. Plaintiff's request for alternative service is **granted**. Service may be completed by mailing the summons, amended complaint, and a copy of this order by certified mail addressed to counsel for Gunday and the Corporate Defendants. Plaintiff shall also mail these documents to Gunday's last-known business address – the San Francisco address discussed above.

3. Service will be deemed effective on the date of mailing.

Dated this 30th day of November, 2020.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

---

[4] Counsel for Gunday and the Corporate Defendants have moved to withdraw – the second time defense counsel have withdrawn in this case – but the Court has not yet ruled on their motion, allowing Defendants until December 11, 2020, to have new counsel appear. Doc. 58. Because service of process on present counsel will involve no significant actions on their part, the Court concludes that service on them is appropriate even though they have sought to withdraw.